The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Good morning. Please be seated. The Court is in session. Today's cases will be called as previously announced and the times will be as allotted to counsel. The first case today is number 20-1245, United States v. Joshua Xavier Cheveres-Morales. And at this time, would Attorney Mudd please introduce himself on the record to begin? Good morning, Your Honor and other members of the Court. My name is John Mudd and I represent the appellant in this case. If allowed, I would like to keep two minutes for rebuttal.  Thank you, Your Honor. In this case, Your Honor, originally the defendant, appellant, had an agreement with the government and a plea agreement for 154 months. District Court decided to sentence him to 195 months using, in his sentencing speech, that he had been arrested and in cases that had not been, there had been no convictions. The appeal, the argument was made that that could not be done. The government agreed. The First Circuit remanded. And then, when we went again- Excuse me. Yes. I'm not sure that's quite accurate. I thought this case was remanded on the government's motion. No. Well, Your Honor, it was remanded, if I may. We filed the brief and argued that there was- You argued in your brief. Yes. You didn't have an oral argument in this case. No. No. There was no oral argument in this case. No. I understand what you argued in your brief. Yeah. Okay. And the government then responded with a motion, didn't it? To remand? Yes. It did. All right. Totally agree. Then we went back to the District Court. The District Court appointed me the CJA case. And essentially, what the court did was, he did the same speech he had done before, except that he mentions that there was a conviction, okay, on one of the cases in which there had been no conviction yet, okay? Irrespective of the DiCiarelli argument, here, the court, and we quote that at page six of our brief, mentions a case in which he had been arrested and there had been use of weapons and had been dismissed. The case was dismissed because of violation of the Puerto Rico Speedy Trial Act. Again, we're here in a case in which there was the usage of a case in which there was no conviction. Instead of agreeing to an 154 months, which is a lengthy sentence, the court did not sentence him to 195 months, as he had done before, but to 240 months. Everybody agrees, even the government agrees, that under our Ciciarelli case law, there was an error. Yes. The question I have is whether it is otherwise inappropriate for the court to consider it as a valid 3553 thing. Okay. Or would doing so also, because it means that you're not changing the criminal history if we follow Ciciarelli's principles, but is the court not allowed to consider it nonetheless under 3553? I understand you can. There is a case law, which we cite, and actually in the court order, the court mentions in cases in which it says they can do that, that's number one. Number two, when we look at the cases cited by the government, none of the cases say you can't. It says, and I think Supreme Court case law. What are you arguing is the abuse of discretion then, if you're conceding that the court can factor it in? What I'm saying is the appellate court has the discretion to do that, to consider the discretion, even though it was not argued in the brief. And what do you base that on? Why do you say that even though you haven't preserved that by briefing it, why do you say we have discretion to consider it? Well, Your Honor, there was one case in which actually a court quotes and we quote in our brief and there's another case in which it says you can do it to a sponte. Second of all, Your Honor. When you say you quote in your brief, you mean in your supplemental brief? Yes, my supplemental brief, yes. And second of all, Your Honor, when we go at, when you look at the cases that the government cites, they're basically the same as U.S. v. Sinning Smith. And what the court says here is ordinarily you shouldn't do it. But it doesn't say you can't do it. That's why we go into discretion. I understand the court has the discretion and raise the issue. And I think, and there's another issue which is. I mean, this whole problem could have been avoided if you would simply raise the issue in your brief the way one would expect that defense counsel would have done. I agree with you entirely, Your Honor. And the fact is that I didn't. In addition, we have to look at the best use of the court's resources. I don't mean courts in the general sense of the word. If the court, for example, says, I'm sorry, you waived it, that's it. I have to tell my client, being truthful, as I should, ethically, hey, I committed a mistake. You should do an effective assistance of counsel argument. The government concedes there was a deteriorating violation. So therefore, they have to concede it in the district court. And even if the district court says, no, I'm not going to give you the break, then we come over here. And I believe that the court would say, no, I'm sorry, there's a violation. And therefore, it is ineffective assistance of counsel. But that would expend the resources of the government, government in the ample sense of the word, of the courts. To me, it makes no sense. Once this was raised, I think we should. But that sort of gets back to the question Judge Selye asked, which is, so what do you want us to do? Well, there's two things I want you to do. Even if you ignore Tutorelli, I believe that the sentencing was incorrect because of the usage of an arrest that later was dismissed because of violations of Puerto Rican law. That he can't do, and he didn't. We have case law that says you can't focus on an arrest unless there's evidence to support the underlying factual scenario. But we also have case law that says it's not improper for the court to recite a defendant's history. So why wouldn't we view this as just citing the defendant's interactions with the criminal justice system? Your Honor, if you look at the paragraph that we are quoting, which is on page six, it's not only what it says there is the reciting of what was done. But the interest of the court in doing it again when the government in the previous appeal had conceded that that was an error. And I don't think that this is what should be done. I don't, what we see here goes beyond that. I don't think that answers Judge Thomson's question. If you look at Judge Bososa's sentencing, it is at least arguable that Judge Bososa didn't rely on the arrest the second time around, that he merely recited it as part of the criminal history. And what is there in what Judge Bososa said that leads you to a different conclusion? My point, Your Honor, is that if you look at the statement of the court in the second sentence, it is, with the exception of the fact of the sentencing in one case, exactly the same. I know that. But the statement of the court doesn't mention the arrest. The arrest is recited as part of the criminal history. That's a different argument, that the variant, the sharp upward variance is insufficiently explained because the court merely recited by rote what it had said the first time around. I understand that argument. That's a different argument. Well, Your Honor, I have to disagree with the court, with the judge, in what you're saying. I believe that this case, it is the same emphasis was provided here in the second sentence as was done in the first sentence that the government agreed that was incorrect. And my time has expired. It is. Thank you. Thank you, counsel. At this time, would counsel for the United States please introduce himself on the record to begin? Good morning, Judge Montecalvo. And may it please the court, David Bornstein on behalf of the United States. Good morning. This court should affirm Mr. Chavers' sentence because he has not shown any error, plain or otherwise. Well, let's talk about that. Yes, Your Honor. There is a titularly error here, isn't there? There is. All right. And we sent this case back on the government's motion solely to correct the court's improper use of an aggravating factor. All right. That's not what the court did. In fact, the court not only relied on the same aggravating factor but said, ah, that aggravating factor is now ripened into a sentence, so I'm going to double down on it. All right. Now, why can't we, despite the rather inexplicable default of the defense counsel in not raising the titularly error, why can't we, to preserve our mandate, take notice of that error and take action to correct it? Isn't that our power and authority under the mandate rule? No, Your Honor, because there are two different errors. The error that we conceded in the first appeal was that the district court had relied on arrests not resulting in conviction in a way that equated them with guilt. Yes, but titularly says that when you send the case back, all right, the court can't rely on a subsequent sentence, on a sentence subsequent to the first sentence when an arrest has ripened into a sentence. That's the titularly error. So there are two different concerns under titularly. The first one is whether the district court could factor the intervening sentence into the criminal history category when doing the guidelines calculation. That was an error. The second consideration is under titularly in the mandate rule, could the district court take account as a sentencing factor of the intervening sentence? And there, the answer is yes. And it's yes under this court's precedent, United States against Bryant from 2011, in which in an opinion that Judge Sellew joined, it was authored by Judge Boudin. Yes, Your Honor. And did Bryant say anything about subsequent sentences? It said that titularly may not be read to prevent a district court from considering facts that arose post-sentencing. Considering facts that arose post-sentencing, but it wasn't talking about sentences, which was a specific issue with titularly. The titularly can be read to say what titularly said. Titularly couldn't be read broadly. That's what we said in Bryant. I still agree with that. But now we have the specific titularly error. We didn't have that in Bryant. And I would think, Mr. Bornstein, that the government, which has a primary interest in seeing that justice is done, would feel rather uneasy about asking the court to remand the case because the sentence is too harsh, because the sentencing court has made an error, and then sandbagging the defendant by putting him in a position where the sentence that results is even harsher than the government conceded was improperly harsh the first time around. I have a few responses, Your Honor. Number one, there are two different issues under titularly. One is what constitutes a prior sentence for purposes of guidelines section 4A1.2. And the second is whether a district court may consider post-sentencing facts like a new conviction and sentence that did not exist at the time of the original sentencing. We conceded that the guidelines calculation was incorrect. However, under this court's case law, not only under Bryant, but also Congress's 18 U.S.C. section 3661, the Supreme Court's recent statement and conception against the United States, is that no limitation may be placed on the facts that a resentencing court may consider because that resentencing court sentences someone in real time. So the district court could consider the intervening conviction as a matter, as a sentencing factor, but it cannot factor it into its guidelines calculation. Those are two distinct issues. Moreover, there was no sandbagging here. The government abided by the plea agreement, and we recommended a guideline sentence as we had agreed to do. But the government asked the Court of Appeals to remand the case because the district court had impermissibly relied on an aggravating factor. The implicit theme in that remand is that the defendant received too harsh a sentence. So you remanded it. You got it remanded to set the defendant up for an even harsher sentence. I mean, that's pretty clever lawyering if that was done intentionally. I'm willing to assume that it was not done intentionally, that the government simply made the same sort of error that the district court and the defense counsel made. But the result is rather unseemly. The result is that a defendant who had one sentence gets a higher sentence because the government represented to the Court of Appeals that the first sentence was too harsh. And, you know, there are some things that just don't feel right, and therefore they aren't right. And I'm struggling with the notion of why this isn't one of them. So, Your Honor, there's a material difference between what the district court did at the original sentencing and at the resentencing. At the original sentencing, the district court looked at the arrest not resulting conviction and said that it would infer that Mr. Chavez had a pattern of violent crimes. By inferring from the arrest not resulting conviction that he had committed other crimes, that was an error under Murrow-Perez. You're talking about what the district court did. I'm talking about what the government did. We did nothing here because we did not. You did nothing? The motion to remand was filed by some stranger that signed the AUSA's name to it. Your Honor, we— The government moved to vacate the original sentence and remand for resentencing. That is because— Isn't that right? Yes, there was an error under Murrow-Perez. And the reason for that is because there was an error, the result of which the sentence was harsher than it should have been because the error was in the inclusion of an aggravating factor. Yes, Your Honor. And so you remand because the sentence was harsher than it should have been to set the defendant up for an even harsher sentence than that. That's the anomaly that you seem to refuse to address. Your Honor, there is no anomaly because there was a significant difference with that intervening conviction. And that is a permissible sentencing factor that's been recognized by the Supreme Court in Pepper v. United States in 2011, Wasserman v. United States in 1984. But I think more significantly, Your Honor, the Ticciarelli— Hubbard says the Ticciarelli is wrong? Because Ticciarelli says you can't consider that sentence. It says you may not consider it when doing the sentencing guidelines calculation. You may not assess three points for the sentencing guidelines calculation, but repeatedly, Your Honor, in cases like Serrano-Barrios and Ramos-Carreras, which Judge Thompson, the panel there, in an opinion you authored, sent out an amended opinion recognizing that although you had limited the record on resentencing to what had existed at the original sentence, you noted that nonetheless the parties are, quote, unquote, entitled to offer admissible information about events or developments that occurred after the most recent prior sentencing hearing. The point, Judge Selya— Do you have any case that contradicts Ticciarelli? Any case in which a sentence is vacated because of an error in considering an arrest and then the sentencing court is allowed to use that arrest, which has ripened into a sentence, as part of its guideline calculation or part of its sentencing calculus? Because if you have any such case, I haven't read it. Your Honor, I cannot think of one under those specific facts, but it's the general— No, but that's the Ticciarelli holding, so therefore Ticciarelli is good law. Yes, Your Honor, we have conceded an error under the guidelines calculation, but I'd like to make one point quickly. We believe that despite that Ticciarelli error, relief may not be granted here under the party presentation principle. Let me explain. This court, in its order for supplemental briefing, presented the appellant on a silver platter this Ticciarelli error. However, in his supplemental brief, he does not run with it. Indeed, he still does not challenge the guidelines calculation. He still requests for relief a 154-month sentence, which is a sentence he would receive if the new sentence is counted within his guideline range, and thus he has a criminal history category of two. We don't have a right to police our mandate directive. Your Honor, there is no— The only violation of the mandate comes with a completely waived claim. It's one that even though you presented to the defendant in the order for supplemental briefing, he did not brief that issue. He still requests for a sentencing to 154 months, which is under the new guideline range of having a criminal history category of two. And as Your Honor noted just last week in the Rivera-Rodriguez decision, that's appeal number 21-1137, it's footnote 28, a district court, you indicated, violates the party presentation principle when it raises and decides an issue sui sponte that no party had raised. And even in his supplemental brief, Mr. Chavez does not raise the sentencing guideline error. But I would like to underscore once again, there is— In Concepcion, the Supreme Court was perfectly clear that a district court would err if it believes that it may not consider new facts that postdate an original sentencing. It is only a congressional statute or a constitutional provision that may prevent it from doing so. And I can think of no case by this court that prevents it from doing so. Ticciarelli, as interpreted by Bryant, is limited to the guidelines calculation. It does not prevent a court from considering new facts as a sentencing factor. For these reasons, Your Honor, unless there are any further questions by the court, there are a lot of other issues on this appeal, but we would ask the court to affirm. Thank you. Thank you. Thank you, counsel. At this time, Attorney Mudd, please reintroduce yourself on the record. You have a two-minute rebuttal. Yes, Your Honor. John Mudd for Appellant. Very quickly, Your Honor. This case is more closely related to U.S. v. Román Huertas, which is 2017, where an untranslated document was considered in sentencing. It was remanded because you can't consider an untranslated document. And when the resentencing was done, it was translated. I said, no, you can't do that because you didn't have that in your first sentence. Same thing here. The sentence that the court used, or the government says the court used, was not in record. When the original sentencing was done, number one. Number two, in this case, we asked for a 154-month sentencing, which is the agreement. I don't know what else do I have to say, aside from agreeing with the court that there's a de jure problem, to say that there is a de jure problem. If the calculation, the three-point calculation, was the reason for the 240 months, which I still don't agree, still we asked for 154 months. And that's what is needed. The court has any questions? The court isn't bound by that. No. So I don't even understand your argument then. What my argument is, Your Honor, is that we argued that there was a de jure problem, which is the three-point enhancement, as the government concedes. Therefore, without that, he should have been sentenced to the original sentencing of 154 months. With the original agreement, I'm sorry. Not the original sentencing. And that is my point. Court has any further questions? Nothing further. Thank you, Your Honor. Thank you, counsel. That concludes argument in this case.